# **<u>EXHIBIT 1</u>**

## COUNT X: UNFAIR TRADE PRACTICES/CONSUMER PROTECTION

    **I.**    **Florida - Florida's Fraudulent Practice Act, Chapter 817**

1. Plaintiffs incorporate by reference each preceding and succeeding paragraph of the factual allegations as though set forth fully at length herein. Pursuant to all laws that may apply according to choice of law principles, including the law of each Plaintiff's resident State. Plaintiff is currently domiciled in New York, with his residence in Florida at the time of his injury.

2. Florida's Fraudulent Practice Act, as codified under Chapter 817, Fla. Stat. Ann. § 817.06(1), was established to prohibit any person, association, partnership, or institution — with intent to offer or sell, distribute, or otherwise dispose of merchandise, securities, certificates, diplomas, documents or other credentials (including those purporting to reflect proficiency in a trade, skill, profession or academic achievement) — from knowingly or intentionally publishing or circulating any advertisement in Florida that contains a statement, assertion or representation that is untrue, deceptive or misleading.

3. The Florida Fraudulent Practice Act, Fla. Stat. Ann. §§ 817.41(1), affirms that misleading advertising is prohibited. The statute provides, "shall be unlawful for any person to make or disseminate or cause to be made or disseminated before the general public of the state, or any portion thereof, any misleading advertisement. Such making or dissemination of misleading advertising shall constitute and is hereby declared to be fraudulent and unlawful, designed and intended for obtaining money or property under false pretenses."

4. As stated under the Florida Statute, Fla. Stat. Ann. §§ 817.41(6), any person prevailing in a civil action for violation of this section shall be awarded costs, including reasonable attorney's fees, and may be awarded punitive damages in addition to actual damages proven. This provision is in addition to any other remedies prescribed by law.

5. At all relevant times, all Defendants named herein designed, manufactured, assembled, inspected, tested (or not), packaged, labeled, marketed, advertised, promoted, supplied, distributed, sold and/or otherwise placed the GLP-1 RA Products into the stream of commerce, and therefore owed not only a duty of reasonable care to avoid causing harm to those that consumed it, such as Plaintiffs, but also separate and independent statutory duties to be truthful, fair, accurate, and to not mislead or deceive consumers in connection with the sale of GLP-1 RA Products, under the laws of each State in which GLP-1 RA Products were sold.

6. Under this and other consumer protection statutes, Defendants are the suppliers, distributors, manufacturers, advertisers, marketers, promoters, and sellers of GLP-1 RA Products, who are subject to liability under such legislation from fraudulent, unfair, deceptive, and unconscionable consumer sales practices.

7. Plaintiff, Sean Donoughe, purchased and used a GLP-1 RA Product and suffered injuries and direct economic loss as a result of Defendants' actions in violation of these unfair trade practices and consumer protection laws.

8. Had Defendants not engaged in the deceptive conduct described herein, Plaintiff would not have purchased or used a GLP-1 RA Product and would not have suffered gastrointestinal injuries and gastroparesis, both of which required hospitalization.

9. Defendants engaged in unfair competition or unfair, deceptive, misleading, false, fraudulent, or unconscionable acts or practices in violation of the state and territory consumer protection statutes listed below by:

    a. Misleading consumers[1] regarding the safety risks associated with use of their GLP-1 RA Products and overstating the weight-loss benefits[2] and understating risks from

---

[1] OPDP Letter, Sept. 23, 2021 (Novo_GLP_MDL_WEG_NDA_000531088).
[2] https://www.ispot.tv/ad/d6Xz/ozempic-oh

3

  using the GLP-1 RA Products.[3]

b. Overpromoting, advertising, and marketing[4] their GLP-1 RA Products such as to promote off-label use[5], including turbo-charging the pre-existing extensive direct-to-consumer marketing campaign[6] with use of telehealth providers.[7]

c. Failing to disclose that they performed research and testing in a manner that would lead to under-reporting[8] of the severe risks of using the GLP-1 RA Products.

10. These fraudulent, unfair, and/or deceptive practices violate consumer protection and unfair trade practices laws because, at a minimum, they constitute:

a. representing that goods or services have approval, characteristics, uses, benefits or qualities that they do not have;

b. representing that goods or services are of a particular standard, quality, or grade, when they are not;

c. advertising goods or services with the intent not to sell them as advertised;

d. engaging in any other conduct creating a likelihood of confusion or of misunderstanding and that misleads, deceives, or damages a buyer or a competitor in connection with the sale or advertisement of goods or services; and

e. using or employing deception, fraud, false pretense, false promise, misrepresentation, or knowingly concealing, suppressing, or omitting a material fact with intent that others rely upon the concealment, suppression, or omission in connection with the sale or advertisement of goods or services.

---

[3] https://www.novomedlink.com/diabetes/products/treatments/ozempic/about/mechanism-of-action.html

[4] J.P. Morgan Research, *The increase in appetite for obesity drugs* (Nov. 29, 2023), available at https://www.jpmorgan.com/insights/global-research/current-events/obesity-drugs#section-header#0.
[5] OPDP Letter, Mar. 14, 2018 (Novo_GLP_MDL_OZM_NDA_000001286); Proposed Detail Aid (Novo_GLP_MDL_OZM_NDA_003605495).

[6] Atiq, Omar, *Internal Medicine Physicians Concerned by Direct-to-Consumer Pharmaceutical Sales of Prescription Medications*, American College of Physicians (Jan. 5, 2024) available at https://www.acponline.org/acp-newsroom/internal-medicine-physicians-concerned-by-direct-to-consumer-pharmaceutical-sales-of-prescription#:~:text=For%20telemedicine%20services%20to%20take,established%20relationship%20with%20the%20patient.

[7] https://www.businesswire.com/news/home/20210525005492/en/Noom-Announces-540-Million-in-Growth-Funding-to-Further-Accelerate-Expansion-of-its-Digital-Health-Platform

[8] Novo_GLP_MDL_011144997

4

11. The actions and omissions of Defendants are uncured or incurable, or, Defendants had actual notice or were put on adequate notice by the Plaintiff of these acts or omissions, and these claims arising from such acts and omissions sufficient to satisfy any statutory notice requirements.

12. Defendants have a statutory duty to refrain from fraudulent, unfair, and deceptive acts or trade practices in the design, development, manufacture, promotion, and sale of their products. Defendants' deceptive, unconscionable, unfair and/or fraudulent representations and material omissions to Plaintiffs constituted consumer fraud and/or unfair and deceptive acts and trade practices in violation of consumer protection statutes, Fla. Stat. Ann. §§ 817.06(01); §§ 817.41(1) and (6).

II. **New York - New York's General Business Law, Section 349 & Section 350**

13. Plaintiffs incorporate by reference each preceding and succeeding paragraph of the factual allegations as though set forth fully at length herein. Pursuant to all laws that may apply according to choice of law principles, including the law of each Plaintiff's resident State, which is New York.

14. Under New York's General Business Law, Section 349, N.Y. Gen. Bus. Law § 349 addresses deceptive acts and practices in New York. It declares that deceptive acts or practices in the conduct of any business, trade, or commerce are unlawful. The law empowers the attorney general to take action against individuals or entities engaging in such practices, allowing for injunctions and restitution for affected consumers. The law aims to protect consumers from misleading business practices and provides penalties and remedies for violations.

15. New York General Business Law § 350 states that false advertising is unlawful in the conduct of any business, trade, or commerce, or in the furnishing of any service in the state.

This statute serves to protect consumers from deceptive practices and ensures that businesses provide accurate information. Violations can lead to legal action, including recovery of actual damages and statutory damages.

16. New York General Business Law § 350-a defines the term "false advertising" means advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions prescribed in said advertisement, or under such conditions as are customary or usual.

17. New York General Business Law § 350-e provides that any person who has been injured by reason of any violation of section three hundred fifty or three hundred fifty-a of this article may bring an action in his or her own name to enjoin such unlawful act or practice, an action to recover his or her actual damages or five hundred dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages, up to ten thousand dollars, if the court finds that the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

18. At all relevant times, all Defendants named herein designed, manufactured, assembled, inspected, tested (or not), packaged, labeled, marketed, advertised, promoted, supplied, distributed, sold and/or otherwise placed the GLP-1 RA Products into the stream of commerce,

and therefore owed not only a duty of reasonable care to avoid causing harm to those that consumed it, such as Plaintiffs, but also separate and independent statutory duties to be truthful, fair, accurate, and to not mislead or deceive consumers in connection with the sale of GLP-1 RA Products, under the laws of each State in which GLP-1 RA Products were sold.

19. Under this and other consumer protection statutes, Defendants are the suppliers, distributors, manufacturers, advertisers, marketers, promoters, and sellers of GLP-1 RA Products, who are subject to liability under such legislation from fraudulent, unfair, deceptive, and unconscionable consumer sales practices.

20. Plaintiff, Sean Donoughe, purchased and used a GLP-1 RA Product and suffered injuries and direct economic loss as a result of Defendants' actions in violation of these unfair trade practices and consumer protection laws.

21. Had Defendants not engaged in the deceptive conduct described herein, Plaintiff would not have purchased or used a GLP-1 RA Product and would not have suffered gastrointestinal injuries, including fecal vomiting and gastroparesis that required hospitalization.

22. Defendants engaged in unfair competition or unfair, deceptive, misleading, false, fraudulent, or unconscionable acts or practices in violation of the state and territory consumer protection statutes listed below by:

    a. Misleading consumers[9] regarding the safety risks associated with use of their GLP-1 RA Products and overstating the weight-loss benefits[10] and understating risks from using the GLP-1 RA Products.[11]

    b. Overpromoting, advertising, and marketing[12] their GLP-1 RA Products such as to

---

[9] OPDP Letter, Sept. 23, 2021 (Novo_GLP_MDL_WEG_NDA_000531088).

[10] https://www.ispot.tv/ad/d6Xz/ozempic-oh

[11] https://www.novomedlink.com/diabetes/products/treatments/ozempic/about/mechanism-of-action.html

[12] J.P. Morgan Research, *The increase in appetite for obesity drugs* (Nov. 29, 2023), available at https://www.jpmorgan.com/insights/global-research/current-events/obesity-drugs#section-header#0.

        promote off-label use[13], including turbo-charging the pre-existing extensive direct-to-consumer marketing campaign[14] with use of telehealth providers.[15]

    c. Failing to disclose that they performed research and testing in a manner that would lead to under-reporting[16] of the severe risks of using the GLP-1 RA Products.

23. These fraudulent, unfair, and/or deceptive practices violate consumer protection and unfair trade practices laws because, at a minimum, they constitute:

    a. representing that goods or services have approval, characteristics, uses, benefits or qualities that they do not have;

    b. representing that goods or services are of a particular standard, quality, or grade, when they are not;

    c. advertising goods or services with the intent not to sell them as advertised;

    d. engaging in any other conduct creating a likelihood of confusion or of misunderstanding and that misleads, deceives, or damages a buyer or a competitor in connection with the sale or advertisement of goods or services; and

    e. using or employing deception, fraud, false pretense, false promise, misrepresentation, or knowingly concealing, suppressing, or omitting a material fact with intent that others rely upon the concealment, suppression, or omission in connection with the sale or advertisement of goods or services.

24. Defendants have a statutory duty to refrain from fraudulent, unfair, and deceptive acts or trade practices in the design, development, manufacture, promotion, and sale of their

---

[13] OPDP Letter, Mar. 14, 2018 (Novo_GLP_MDL_OZM_NDA_000001286); Proposed Detail Aid (Novo_GLP_MDL_OZM_NDA_003605495).

[14] Atiq, Omar, *Internal Medicine Physicians Concerned by Direct-to-Consumer Pharmaceutical Sales of Prescription Medications*, American College of Physicians (Jan. 5, 2024) available at https://www.acponline.org/acp-newsroom/internal-medicine-physicians-concerned-by-direct-to-consumer-pharmaceutical-sales-of-prescription#:~:text=For%20telemedicine%20services%20to%20take,established%20relationship%20with%20the%20patient.

[15] https://www.businesswire.com/news/home/20210525005492/en/Noom-Announces-540-Million-in-Growth-Funding-to-Further-Accelerate-Expansion-of-its-Digital-Health-Platform

[16] Novo_GLP_MDL_011144997

8

products. Defendants' deceptive, unconscionable, unfair and/or fraudulent representations and material omissions to Plaintiffs constituted consumer fraud and/or unfair and deceptive acts and trade practices in violation of consumer protection statutes, N.Y. Gen. Bus. Law § 349; N.Y. Gen. Bus. Law §§ 350, 350-a, and 350-e.

### III. Conclusion

25. Plaintiff was injured by Defendants' unlawful intentional conduct, manifested through a pervasive pattern of false and misleading statements and omissions to physicians and consumers about GLP-1 RA Products by overstating benefits, marketing the products off-label, and omitting or downplaying side effects and complications of the products from the information provided about the GLP-1 RA Products.

26. Plaintiff, to his detriment, at all times acted as reasonable consumers in relying upon Defendants' misrepresentations and material omissions of risks and safety information concerning Defendants' GLP-1 Products, as stated to and relayed to Plaintiff by Plaintiff's physician in choosing to purchase and consume the GLP-1 RA Products prescribed to him by his physicians. Plaintiff would not have taken the drug if true risks were conveyed to him. In taking the drug, Plaintiff suffered economic losses in purchasing the product, and suffered personal injury as noted in this complaint.